Good morning, Your Honors. My name is John Pappas. I represent myself and my partner, Sarah Scott Grubner. Good morning, Your Honors. Karen DeGrande on behalf of the defendants in the first appeal, Yvonne Ocrant, Richard Kalaji, and Angela Culberson. Good morning, Your Honors. My name is Joel Handler, and I represent the appellants, Patrick Hurst and Chris Dickerson, in the matter 13-3051. You basically know our procedure. Since there's three of you, I don't know if you've decided how you're going to divide it up or what, but in light of that, we'll probably be a little more liberal on time. One and two, there will probably be several questions on this case, so we're not going to hold you to a real time period. So with that, you may proceed. Thank you. Do you want to take the first appeal, the one that's numbered first? Fine. May it please the Court. These appeals involve much more than a horse controversy, and I will address that in the second part of my argument. I want to jump to the fact that res judicata does not apply to bar our causes of action because there was never a ruling on the merits on anything in Lake County, and not only that, there was no chance for us. It wasn't decided, nor could it be decided. First, the action that was filed in Lake County was for a temporary restraining order, a preliminary injunction. As we know, that type of action does not seek a ruling on the merits. It's just to preserve the status quo. Judge Hoffman never held a hearing after his ex parte order of June 1. Counsel, you're merely repeating what you've stated in your brief. I would ask you to more address what the opposition has indicated, and I would also indicate to you that a lot of your law predates River Park. So be aware that if you can't get over River Park, you aren't going very far. Well, I think the main thing is that there is no identity of the parties or their privies, and therefore River Park does not preclude us from pursuing our cases here. The only parties that were in the Lake County case and in this case were Patrick Hurst, myself, and Sarah. Mr. Dickerson, who is a defendant in this case, was never a party to the Lake County case. In fact, if he was in privy based upon his contract, he revoked that contract. The attorneys that we have sued were not parties in the Lake County case, nor were they in privy. The only time an attorney can be in privy is pursuant to Section 508 of the Illinois Marriage and Dissolution of Marriage Act about their fees. What about the agency relationship? As Adolph said, to be in privy, you have to have a mutual or successive interest in the property. The property in this case was the horse. The attorneys were disclosed agents of a principal, but that does not make them a party, nor does it put them in privy. Well, you say, Adolph, that was my case, and I'd have to say I disagree with you based on Cantwell. But I go one step further and say it's not necessarily identity of the parties, but the identity of the interest that the parties represent. I agree. And the common interest here seems to be one in the same as is stated in River Park. The attorneys do not have an interest other than representing their clients. They get paid whether they win or lose. The only time I could possibly see an attorney having an interest in the case is an attorney who has a contingent fee agreement. He or she is in the same boat as their clients. You know, when you look at the res judicata cases, couldn't one argue that what the courts are doing in those cases is to prevent you from doing exactly what you're doing here? In other words, there was a controversy. It's all about the horse. The judge went through it and said, okay, I'm going to put the original agreement into effect, and everybody's going to put in their bids, and we're going to sell the horse, and it's done with. And the courts are seeming to say, okay, the matter's over with. We don't want this dragging on and repetitive actions going on. If you had a beef with the other side about this horse controversy, bring it up before that court. Isn't that what the case is saying to us? They do not. What the cases hold is that there is no duty for a defendant to file a counterclaim. But if it's the same transaction, don't the cases say it doesn't matter whether there was a compulsory counterclaim or not? If it's the same transaction, we want all this controversy about the horse done in one courtroom in one case. That would have been nice. However, two things. Number one, the defendants sought and obtained a stay order that prevented us from asserting any right that we had. We were judicially handcuffed. They asked for it as a shield. No discovery was done. If we wanted to pursue a counterclaim, we couldn't have because the judge said the entire case is stayed, and it was stayed right up to the time that we won. Our bid was the highest bid. Well, wouldn't the obligation be on you that we've got to dismiss the prejudice or request leave once the horse transaction is completed? I won't need to file a counterclaim. I won't need to pursue further charges. This looks like the whole thing is done, that agreed order. Looks like the whole transaction, anything arising out of it, is completed. But it wasn't. There is no obligation. There is not an Illinois case that says a party has an obligation to move to lift a stay order. You know, Judge McGrath was correct when she found on the slander per se cases that the stay order prevented us from pursuing that cause of action, and that there was no obligation for us to bring a counterclaim. And if you look at 735 ILCS 52608, it says a defendant may, not shall, may file with its answer a counterclaim, which means it can either go in that case or it can be asserted later. The issues that we are raising in this case were never raised, nor were we allowed to raise them in Lake County. But I still don't see how you get over River Park and David A. Noye's case. It says any single group of operative facts, regardless whether they were asserted under different theories or not. Your case law seems to be prior to, and that's true, when they had the evidence procedure instead of the intentional transactional test. Well, there was a distinction. But now the transactional test is the test and not the evidence test. How do you distinguish those two? You keep going back to the evidence test. No, I don't. What I go back to is the stay order. What happened in River Park, they filed a case in federal court because they wanted to rezone some property. They lost there, and they filed the same case in state court. And they properly held it's the same cause of action. You lost once. You don't get a second bite at the apple. But I think it's wrong to focus on the transaction part of this because of the stay order. Just to be clear, was there ever a request made to lift the stay so that you could bring those other? No. And there's no Illinois Supreme Court case or public court case that says the party has an obligation to lift a stay order. And do you really think it makes sense that you have a chancellery judge whose main calendar was foreclosures. He sets what he wants to do. Let's sell the horse, and let's not litigate this case. Let's not do anything. And that he's going to change his mind? He doesn't even have a jury box in his courtroom. Nor does he ever preside over or try any tort cases. He was a chancellery judge, and his call was foreclosures. As part of the relief sought by the appellees, they would like a ruling pursuant to 2615 on our trespass case and our civil conspiracy. That was never ruled on by the judge below. And they claim that the party, that because Ms. O'Krant didn't access our property on those two occasions, that she can't be found liable in trespass. However, that is not the law. If she participated in conduct which gave her a high degree of certainty that a trespass was going to happen, then she is responsible for the trespass. The May 5, 2011 trespass, she was a complaining witness the day before when she called the Barrington Hills Police Department. The report lists her as a complaining witness. She told the police that her client had a shipper, whom she referred to her client, was going to our property to remove a horse, and she expected trouble. She wanted police assistance, and she was turned down and told it was a civil matter. The second trespass occurred, she drafted a contract, and what a sham document that is. They signed it Saturday morning on their way over to the property to get the horse. The shipper was Jack Jones, who was the husband of one of O'Krant's clients, Chris Kula, Chris Ann Kula. And this contract doesn't pass the smell test. The buyer was a friend, neighbor, and the attorney for Mr. Hurst. He and his daughter never saw the horse, they never rode the horse, they didn't have their trainer ride the horse to see if it was suitable for the daughter. They were buying a horse that at the same time they were saying was near death's door, was dehydrated, malnourished, and lame. Mr. Dickerson, the smoking gun here for this contract that Ms. O'Krant prepared is after they came on the property, took the horse out of its stall, tied it in the trailer, and started to move the trailer off our property, that the shipper was told, do not take this horse to where my horses are, take it to where Mr. Hurst's other horse is. They're miles apart, and that was clearly an end run to get the horse, it was a pretend contract, and they were going to get the horse for Mr. Hurst and his daughter, and that is not proper. What we have here is self-help, we have an attorney, two attorneys, and an investment banker, who decided to take matters into their own hands instead of filing a case to dissolve the joint venture. Or whatever action you wanted to bring, and what did their conduct teach those two girls? They took their daughters on May 28th to my property, and had them participate in this trespass and taking. What do these girls, if we don't get a chance to try this case, these girls are going to learn it's okay to trespass on somebody's property to take what you want, it's okay to create a sham contract to get what you want, it's not necessary to use the courts to resolve a civil... But the end result is the girls didn't get the horse. You're right. You got the horse. It stayed there, yes. Isn't that the lesson? The only reason why my check, my bid was greater than theirs. There was no ruling on the merits that we deserved the horse, it's just I outguessed Mr. Hurst and paid more for the horse. And let's look at the contract. This horse was marketed at $80,000. Mr. Dickerson, allegedly on a Saturday, wrote a check which we've never seen for $30,000, allowing Mr. Hurst to recapture his $25,000 investment, and Sarah and I get $2,500 for one year of our work on the horse. Obviously, a sham transaction. I guess I'm bringing it back to the same point. When you agreed to have the other case dismissed, you knew about all this. Yes. And you didn't seek your remedy in that court, but instead of doing a multiple lawsuit, a different lawsuit when it could have been resolved? I would agree with Your Honor. If we started to pursue our intentional torts and got an adverse ruling and withdrew our complaint or we didn't like some of the rulings by the court and we dropped it and we non-suited it and refiled, but we never had an opportunity to present it. What about between June 1 and June 30, where you did file two actions? We didn't file them. Or you responded to two actions? No, we responded to the temporary restraining order, the petition for a temporary restraining order, and we responded to the impreliminary injunction. That's what we responded to, but it was never ruled upon. He didn't even consider it. He didn't read anything. We even submitted a video of Sarah riding the horse, demonstrating that it wasn't lame. He did nothing on this case because he wanted it off his call, as you can tell. And the defendants didn't want to pursue the case either. They asked for a stay order. We don't want to do anything. And there was no obligation, there's no law that required me, as soon as that case was over, to file it in Lake County. Thank you. May it please the Court, Counsel. Again, good morning, Your Honors. Karen DeGran for the defendants, Yvonne O'Krant, Richard Kalaji, and Henshaw Culbertson. I will follow the Court's admonition to try and stick to matters that aren't just a repetition of the briefs, but it's clear that the trial court dismissed these claims against these defendants because they truly were a thing adjudicated, res judicata. The Lake County Court, which, contrary to the suggestion of counsel this morning, was a court of general jurisdiction, addressed this dispute about the joint venture and the party's conduct surrounding it. And the action was dismissed with prejudice on September 14th, and then now we have round two in Cook County four months later. On the issue of privity, counsel... This is the argument that most bothers us. Is it? Then I'll address this, Your Honor. As an initial matter, the plaintiffs forfeited a challenge to the privity finding. If you'll note at page 32 of the plaintiff's opening brief, there's no citation in violation of Rule 341 to any authority. It's a very short paragraph discussing the issue of privity, and therefore we submit that the issue is forfeited. But on the merits, I disagree with counsel's recitation of the case law as it pertains to privity. There's no hard and fast rule, and that's exactly what the courts say. The issue that is generally framed is, does the defendant in the second case share a legal interest with the party in the earlier action? And we've talked about the court's decision in the Agoff case. I think it's very helpful. It's a decision from this court in 2011. The only issue in that case was privity, and that's a situation where a landlord was challenging a tax ruling that previously had been litigated by one of the landlord's tenants. It clearly was not the same property right, and I don't think that there's any case that says it has to be the same property right. To the contrary. But the question was, are the legal interests similar enough so that the parties could be construed to be in privity? This court observed, and I think this is applicable to this case as well, that the record was clear, and this was one of the factors that the court took into consideration, that the plaintiff-landlord in the second case was well aware of the earlier lawsuit, and I believe that the president of the landlord actually testified in the earlier lawsuit. The parallels are undeniable. With that knowledge, also the shared interest issue is not coextensive. And I think another case that is helpful on this exact point is the Longan case of this court, First District, 2010, looking at the question, are the interests sufficiently similar? This is a case where an attorney brought a subsequent lawsuit against his co-counsel. They had been co-counsel in a class action previously where the issue of attorney's fees was addressed. But in looking at the specific interest of, or the specific question of whether there was an interest, a shared legal interest, the court didn't just look at the matter of, were attorney's fees addressed? This court said, and I'll quote, that the lawyers who had represented the parties in the earlier case, and this is the quote, were aligned such that all the attorneys sought a favorable outcome for their clients. And it seems to me that that language is certainly applicable here. And also the issue of attorney's fees had been addressed as well. But the issue of the alignment of the attorney's interest with his client was significant to this court. And it seems to me that the very theory that the plaintiffs allege in this court demonstrates privity. The trial judge in this case noted that the plaintiffs had alleged that these defendants were co-conspirators with their clients. To enter what the plaintiffs contend is a sham transaction, obviously we contest that. And the alignment is clear from the plaintiffs' very own pleading. And that was also the way that this court reached the issue of resolving a privity question in the Doe case. Look at the allegations of the complaint. And in that case I believe there was a conversion count. And supposedly the later parties were acting in concert with the parties who had been involved in the earlier proceedings. I think it's clear. I don't believe that privity is so inflexible that this court should divorce the conduct of the attorneys from their client's interest. I believe it is the same interest. And also looking at the allegations that were raised by the plaintiffs, which the plaintiffs didn't discuss in their presentation, in their response to the TRO. It brings all of that conduct and joint conduct before the court. It brought it before the court in the Lake County action and reprised it in this action. And I believe that also is indicative of privity. Can I answer questions on that point? I don't know. My only concern is how far can we take privity in these actions that it might in some ways start to affect attorneys' interrelationships. And I may not be making myself perfectly clear, but it could box attorneys in future cases. Well, I would say that in following this court's precedent on the issue, it's got to be a flexible definition. And it's a definition that it has to be looked at at each case on a case-by-case basis. And I don't see a problem arising in the future, Your Honor, if this court were to find privity here, especially when looking at the specific allegations of misconduct that were raised by the plaintiffs in the Lake County proceeding, where they said that the attorney was acting with her clients to basically perform a trespass. And so the issue that was raised, although it wasn't resolved, there wasn't a specific adjudication on it, and there need not be, but there is an issue raised as to whether there could be some legal responsibility for a trespass. And that was raised, that was before the court, and the interests of the client and the attorney were aligned on that issue. I think it passes the test. I believe it passes the test that this court established in the Agoff case as well as in the Ligon case. It's a flexible definition. Looking at the allegations that were set forth in the response to the TRO, again, I think that makes it very clear that we have the same cause of action. And I'll note that the plaintiff did not even address that element of the res judicata analysis in their reply. They seem to have conceded it, although it was challenged here today. Again, we go back to the complaint filed in Cook County and look at the accusations that the Shamrock defendants in the Lake County case made. It seems to me that when this court applies the River Park test, it easily passes muster. Single group of operative facts, which is determined, as the court said in River Park, pragmatically. Are the facts related in time, space, origin? I think that the answer has to be yes. In the Lake County action, the Shamrock parties presented these issues. The issue was not just limited to interpretation of that May 8th contract. It went beyond the race of the horse and the conduct of the parties and of counsel in implementing that contract, seeking to enforce that contract, also were before the court, as is clear from the response to the motion for TRO. There's also been a statement here today by plaintiff's counsel that there couldn't be the same action because the only relief sought was a temporary restraining order or a preliminary injunction. That's not the case at all. The verified complaint that was filed in the Lake County action establishes that there was more relief than that requested. But that response to the TRO makes it very clear that there was this specific conduct that's contained in the counts against my clients in the Cook County action was raised in the Lake County court. Clearly and explicitly, the plaintiffs there allege that Attorney Ocrant aided the horse in a trespass. And that's the exact theory that we have here. And if the court doesn't have questions on that issue, I'll move to the last issue for res judicata, which is the question of a final order being entered on the merits. And again, I believe that's quite clear on this record. The trial court reviewed the record very closely to reach this conclusion. And I believe that the orders that were entered by the Lake County court certainly support it. The parties were before that court. Again, a court of general jurisdiction after the TRO was entered. And what did the Chancery judge do? The Chancery judge took that contract and guided the parties basically through enforcing that contract. And there's been a lot of discussion this morning by counsel about the stay and being handcuffed. First of all, it seems to me quite clear from River Park and from the Mann v. Roland case that whether a counterclaim actually was filed, and in the Mann case, the party was denied leave to file a counterclaim. And in that case, the court said, well, that's just the way it goes. That was your opportunity to raise those issues and to have them litigated. And that did not occur. And you should have filed an appeal, not filed a new action. But clearly, there was not, I don't believe it's accurate, as counsel stated, that this stay was imposed on the defendants in the Lake County action. It was entered into by the agreement of the parties while the contract terms, basically, which were embraced by the judge, were implemented. What are we going to do with this horse? What are we going to do with this dispute? Let's look to the May 8th contract and move forward. But there was no motion for a stay, and it's also not correct to say, as counsel did, that Judge McGrath, in this case, said that there was no need for counsel to seek to lift the stay. In fact, at page 95 of the record of the report of proceedings, you'll see that Judge McGrath actually made a contrary statement when the issue arose before her. So clearly, under Mann, under River Park, there's not a requirement that the court necessarily had a hearing, as counsel has argued. If leave to file a counterclaim is denied, that's not an issue that affects the res judicata analysis. The parties proceeded with the bidding process. The plaintiffs were the successful bidders below. The plaintiffs wound up with the horse following the judge's order of September 6th. The matter was concluded, and the case was dismissed with prejudice, given the compliance of that order. And that was, or frankly should have been, the end of all of this. The trial court essentially held the parties to their agreement. But there need not have been a hearing, as we know from River Park, which was a 12B6 dismissal, as we know from Mann. And in the Mann case, actually, the case had been voluntarily dismissed by the party who later sought to bring the malpractice action. And yet, it was found to be an adjudication on the merits. There's no reason and there's no authority to conclude that the stay order prevents operation of the doctrine. The plaintiffs asserted the tortious conduct that they asserted in this case, and they did not take steps to pursue it, and that was their choice. But that doesn't affect the correctness of Judge McGrath's order. May I answer any questions? No, thank you. Thank you, and I will stand on our briefs as to the alternative 2615 arguments. Thank you, Your Honors. We ask for affirmation. So how are we going to, do you want to respond to her? I do. All right. I, too, am troubled, and I believe that the privity, the lack of privity is important here. There is no way, and I think there are ethical considerations for a finding that an attorney shares an interest with its client in a case. You're not supposed to do that under the rules of ethics, number one. Number two, what happens if you so hold, that would be tough for an attorney to go ahead, if he has an interest, to be able to try the case. It's clearly, we have one defendant by the name of Mr. Dickerson who is not a party in that case, and when he revoked his contract with Mr. Hurst, that got rid of any chance that he was in privy with Mr. Hurst. That got rid of any, since he was not in privy with the Hinshaw defendants either, Mr. Dickerson. The Ligoni case is a little bit of an aberration, because it cites Cantwell as its authority that an attorney can have an interest with his clients. In Cantwell, it was the attorney under the Section 508 of the Marriage and Dissolution of Marriage Act has an interest in his fees, and he can step up, he or she step up in the dissolution action and seek fees. That's completely different than the situation that we have. That's the only case that holds that an attorney can be in privy because of that section of the Dissolution Act. But you didn't respond to my question about the attorney-client relationship where there's actually an agency, which bars a cause of action for conspiracy. You mean civil conspiracy? Yes, that's true, unless someone who is not in a relationship, the attorney-client relationship, is acting with the attorney and the client. And that, in this case, was Mr. Dickerson. The law is clear. I think it was Edelman v. Hinshaw. In that case, there were just a vague allegation that someone was involved in the conspiracy and there were no facts stated. We stated numerous facts that creates a civil conspiracy exposure because Mr. Dickerson was involved. He was part of the sham contract. He was part of going to secure the horse. And he was part of an action to get the horse to Mr. Hurst and not be a legitimate purchaser. So because Mr. Dickerson was involved, an attorney can be sued along with the client for civil conspiracy. Does that address? Yes. Thank you. May it please the Court, again, my name is Joel Handler and I represent the appellants Patrick Hurst and Chris Dickerson. In response to your inquiry, Justice Smith, about the privity issue with regard to res judicata, I think the plaintiff has already conceded that Patrick Hurst clearly would have privity because he was one of the parties in the Lake County action. Similarly, Mr. Dickerson would have privity. He did share a legal interest with that of Mr. Hurst. So I don't think the privity issue is the big issue. As you know, by virtue of my appeal that we raised, we dealt with the identity of causes of action element that Judge McGrath seemed to say didn't exist with regard to the defamation claim. And it was kind of puzzling to me when that happened, but especially since on January 17th, in the record, Judge McGrath found that there was identity of causes of action with regard to the claims at issue here. She found that that component was met. But even putting that to the side, the issue of the transactional test seems to be ignored when you look at the plaintiff's briefs. Because the plaintiff's briefs, as Mr. Pappas has indicated before your honors today, is saying, well, because we're asserting different causes of action, therefore, it doesn't apply. Well, that's not the test. And the test, since we've all filed our briefs, there have been about, I believe, six cases that have come out dealing with the doctrine of res judicata, and the transactional test is still the law. And there was a single group of operative facts here. And the facts about this claim defamation were raised by the plaintiffs before Judge Hoffman in Lake County. You see on 6-9-2011, the plaintiffs filed a verified response opposing the injunctive relief, and that's in the record at C-235-44 and 252-297, where they raise the exact same things that they are raising in Count A of the complaint here in the Circuit Court of Cook County. Similarly, on June 27, 2011, the plaintiffs filed a petition for sanctions, and that's C-422-424,  So as Justice House raised and asked the plaintiffs about the stay issue, there was nothing that precluded the plaintiffs from bringing a counterclaim or asking for a ruling on their motions for sanctions or anything, even in light of the stay. There was no order saying, there was nothing in the record that said that the judge said, hey, don't come to me with anything. You know, I'm just staying everything. If it was so important that they could raise it twice in the Lake County action, they should have got a ruling. They should have received and requested a ruling there and not then wait a while and say, well, I didn't get a good result over in Lake County, so now I'm going to try it over here in Cook County. And that's exactly what's going on here. So you have a situation where there was and there still is an identity of causes of action, and with regard to that Count A, it's the same exact stuff that they raised twice in Lake County and now they're trying to raise here. Assuming, I mean, we accept that promise, how do we get over the fact that an interlocutory order is not a final order? Well, because I think Judge and I think both sides cited the Hanley decision, and the Hanley decision does indicate that if a final order is entered, and it's just, it doesn't seem, it says all preliminary orders in the suit are reviewable on appeal. And that is not just relegated to the fact of saying, well, if a final order wasn't entered against Mr. Hurst or Mr. Dickerson, but in this case, as we cited in our brief, there were final orders entered. And the fact is, then, that I think you get around it because Hanley gives you the authority to do that. And where it's crystal clear, it doesn't say that all preliminary orders with regard to a particular defendant or a particular party are reviewable. It says all orders are reviewable. All right. Okay. If you have any questions, other questions, I'd be glad to address them. But my clients would request that you would reverse Judge McGrath's ruling and dismiss this action with prejudice against them. All right. Thank you very much. Thank you. We believe that this Court does not have jurisdiction for the Hurst-Dickerson appeal. There was never a final order entered against or there was never a final order plaintiff versus Hurst and Dickerson. There was, the slander per se existed. So a motion to dismiss is not appealable and can't be made appealable by 304A language. I mean, every time somebody brings a motion for summary judgment and they lose, you'd be in the appellate court. And that's not the way it's supposed to go. What about the case he cites? That was a different situation. That was final order plaintiff A versus defendant B. Some were final, some were not. He's trying to bootstrap on the final order that the Henshaw defendants received, and that's not permissible. The Hanley case and the other case that is cited is not a situation where a co-defendant got final orders and the other co-defendant could take advantage of that to make a, to give the court jurisdiction. That didn't happen there. Now, addressing the other argument, Judge McGrath was correct when she held two things versus the slander per se. Number one, she held, it's in the record, that there was no obligation on the part of the current plaintiffs to bring a counterclaim. She specifically found that. She also said that we were not allowed to litigate the slander per se because of the stay order. So we believe that her ruling that we are entitled to go to trial on the slander per se should be affirmed. Thank you. I just want to read to you, I'm sure you've read the Hanley decision, but it really just, it's crystal clear here. And this is on 124 Illiop III at 67. Again, once the final order was entered, all of the preliminary orders in the suit were also reviewable. It didn't just confine it to between the parties. In that case, Your Honors, there wasn't just one plaintiff versus one defendant. There were a bunch of them. So Hanley, which the plaintiffs cite as authority in their own briefs, clearly confirmed that this Court has the authority to entertain this appeal. Again, I believe that the plaintiffs, going back to the identity of causes of action thing, they're going around and around the Mulberry Bush. They never tackle, they never tackle the transitional test. They never, say, address, well, there wasn't a single group of operative facts. The reason why they don't do it and they want to talk about, well, we weren't given a chance to do this or we weren't given a chance to do that, is they can't. They can't. This is clearly a situation where they want a second bite at the apple and Illinois law does not allow them to that second bite. Accordingly, again, on behalf of my clients, I request that you reverse Judge McGrath's decision. Thank you very much. Everybody's had their second and third chance to say something. The briefs were well done. Your arguments were very nice. We'll take it under consideration. We haven't made a clear decision on at least one issue, but we have pretty much figured out two of the other issues. With that, we thank you for your time.